# ATTACHMENT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

CREDIT ACCEPTANCE CORPORATION                    PLAINTIFF

V.                                          CAUSE NO. 1:16-CV-70-SA-DAS

LAURA LEDBETTER                                   DEFENDANT

### DECLARATION

1.    My name is Chelsea M. Hon I am over 21 years of age.  I am
competent to testify as to the matters set forth in this affidavit.

2.    I am currently a Legal Assistant of Credit Acceptance Corporation
("Credit Acceptance").  I am fully authorized to make this Declaration on Credit
Acceptance's behalf in that capacity.  All statements herein are based on my
personal knowledge of Credit Acceptance's business operations and the books and
records kept in the ordinary course of Credit Acceptance's business.

3.    I have reviewed and am therefore familiar with the records of Credit
Acceptance relating to the account of Laura Ledbetter ("Ledbetter") under Account
No. xxxx2722 (the "Account").  The Account is based upon a Retail Installment
Contract relating to Ledbetter's purchase of a used 2009 Chevrolet Impala (Vehicle
Identification No. 2G1WD57C791199800) automobile from Global Auto Sales &
Brokers, Inc. and that was assigned to Credit Acceptance on September 8, 2015.

*See* Exhibit "5." The Certificate of Title for the automobile reflects that Credit Acceptance holds a security interest in the automobile. *See* Exhibit "1."

    4.    Attached to this Declaration are true and correct copies of the following documents relating to the Account to which Defendant affixed her physical signature:

| | |
|---|---|
| Exhibit 2 | Declaration Acknowledging Electronic Signature Process |
| Exhibit 3 | Authorization for Electronic Recurring Payments |
| Exhibit 4 | Application for Certificate of Title |

    5.    Attached to this Declaration are true and correct copies of the following documents relating to the Account to which Defendant affixed her electronic signature:

| | |
|---|---|
| Exhibit 5 | Retail Installment Contract |
| Exhibit 6 | Credit Report Authorization Form |
| Exhibit 7 | Credit Application |
| Exhibit 8 | Corporation Disclosure Form |
| Exhibit 9 | Consent and Authorization Form |
| Exhibit 10 | GAP Acceptance of Coverage |
| Exhibit 11 | Guaranteed Asset Protection Addendum |

6.      Attached to this Declaration as Exhibit 12 is a true and correct copy of the Transaction Report (a/k/a payment history) for the Account.  The Account is currently in default.

7.      I declare under penalty of perjury that the above and foregoing is true and correct.

Executed on this the __10__ day of June, 2016.


_____
Signature   Chelsea M. Hohf

295967.1

3

# EXHIBIT 1

# CERTIFICATE OF TITLE

Form 78-001-11-7-1-000

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER |
|---|---|---|---|---|---|
| 2G1WD57C791199800 | CHEV | 2009 | ISS | 4D | G429127-03 |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL. | NEW / USED | TYPE OF VEHICLE | PASS. OR GVW |
|---|---|---|---|---|---|
| 10072015 | | 08 | X | PASS | 000 |

ODOMETER - TENTHS NOT INCLUDED

215595

ACTUAL MILEAGE

OWNER
LEDBETTER LAURA
118 GAYLANE DR
COLUMBUS          MS 39702

1ST LIENHOLDER (OR OWNER IF NO LIEN)
CREDIT ACCEPTANCE CORP
25505 WEST 12 MILE RD #3000
SOUTHFIELD      MI 48034

DATE:
MONTH  |  DAY  |  YEAR
09/08/2015

2ND LIENHOLDER

DATE:
MONTH  |  DAY  |  YEAR

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____  BY _____
            (LIENHOLDER)                              (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

2ND LIEN _____  BY _____
            (LIENHOLDER)                              (SIGNATURE AND TITLE)
THIS _____ DAY OF _____ 20____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS
THE  **07**  DAY OF  **OCTOBER**  20 **15**
15279020511          00396

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by the State as the lawful owner of the Vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER
20657084

MISSISSIPPI DEPARTMENT OF REVENUE

VOID IF ALTERED

***NOTICE: ANY ALTERATION OR ERASURE VOIDS THE ASSIGNMENT AND ALL ASSIGNMENTS THAT FOLLOW***

Federal and State Law requires that you state the mileage in connection with the transfer of ownership. Failure to complete, or providing a false statement, may result in fines and/or imprisonment.

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown in bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

SELLER:
Signature(s) _____  Printed Name(s) _____  Date of Sale _____

BUYER:
"I am aware of the above odometer certification made by seller"
Signature(s) _____  Printed Name(s) _____

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown in bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

DEALER OR AGENT:
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

BUYER:
"I am aware of the above odometer certification made by seller"
Signature(s) _____  Printed Name(s) _____

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown in bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

DEALER OR AGENT:
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

BUYER:
"I am aware of the above odometer certification made by seller"
Signature(s) _____  Printed Name(s) _____

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address, with warranty to be free of all encumbrances except as shown in bottom of page.

Name _____  Address _____

"I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked.

CAUTION: READ CAREFULLY BEFORE YOU CHECK A BLOCK

☐ 1. The mileage stated is in excess of its mechanical limits.

☐ 2. The odometer reading is not the actual mileage.
WARNING - ODOMETER DISCREPANCY

ODOMETER READING (No Tenths) _____

DEALER OR AGENT:
Signature(s) _____  Printed Firm Name _____  Date of Sale _____

BUYER:
"I am aware of the above odometer certification made by seller"
Signature(s) _____  Printed Name(s) _____

## LIENHOLDER TO BE SHOWN ON NEW TITLE

Lien in favor of _____

whose address is _____

# EXHIBIT 2

Sep. 8. 2015 4:29PM GLOBAL AUTO SALES&BROKER No. 5925 P. 5

00380964S2-1

# Credit Acceptance
*We change lives!*

## DECLARATION ACKNOWLEDGING ELECTRONIC SIGNATURE PROCESS

ACCOUNT # ████2722                                          LOT # F8N

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| LAURA LEDBETTER<br>118 GAYLANE DR<br>COLUMBUS, MS 39702 | N/A | GLOBAL AUTO SALES & BROKERS INC<br>1109 HWY 72 EAST<br>CORINTH, MS 38834 |

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number |
|---|---|---|---|---|
| Used | 2009 Chevrolet | Impala 4D Sedan | WHITE | 2G1WD57C791199800 |

## BUYER DECLARATION

By signing below, I, LAURA LEDBETTER        and/or N/A                    (Buyer) hereby state that:

1. I read, understood, and agreed to the eSign Consent form and consented to use electronic signatures to sign all documents necessary to process a retail installment transaction with the Seller named above.

2. I was given the opportunity to review a paper version of the retail installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents.

3. I was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied my e-signature to the documents with the intent to sign the documents as if I provided my handwritten signature on the documents.

4. I received a fully executed copy of the retail installment contract.

_Laura Ledbetter_                09/08/2015        _____        _____
Signature of Buyer                Date        Signature of Buyer        Date

## SELLER DECLARATION

By signing below, the Seller solemnly declares and affirms under the pains and penalties of perjury, as follows:

1. I am an authorized representative of Seller and am knowledgeable about the retail installment transaction between Seller and the Buyer(s) named above.

2. The Buyer was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied his/her e-signature to the documents, and I witnessed the Buyer applying their electronic signature to the documents.

3. I understand Credit Acceptance Corporation is relying on this declaration in accepting for assignment the electronically signed retail installment contract between Seller and Buyer.

Seller: GLOBAL AUTO SALES &        By: ███        Title: Agent  Date: 09/08/2015
BROKERS INC

E-Sign Declaration (Ver 12/14)
© 2014 Credit Acceptance Corporation, All Rights Reserved

# EXHIBIT 3

Sep. 8. 2015 4:29PM GLOBAL AUTO SALES&BROKER     No. 5925    P. 4



*We change lives!*

0038097021-1

## AUTHORIZATION FOR ELECTRONIC RECURRING PAYMENTS

I hereby authorize Western Union Financial Services, Inc. (the "Billing Company") and Credit Acceptance Corporation, through the bank of their choosing, to initiate electronic debit entries to (or to otherwise cause funds to be withdrawn from) the checking or savings account at the bank named below for the purpose of making the payments on the below account with Credit Acceptance Corporation. The debits are to commence on the First Debit Date listed below in the amounts and frequency under Section (E), entitled Debit Information. I also authorize Billing Company and Credit Acceptance to change the frequency of the debits; the dates of the debits; and the bank and bank accounts from which the debits will be taken provided I give Billing Company or Credit Acceptance Corporation notice by telephone, fax or in writing. (See Contact Information Below)

I direct Billing Company to deduct from the bank account the Periodic Payment payable to Credit Acceptance Corporation and to transmit the Periodic Payment to Credit Acceptance. This Authorization shall remain in full force and effect until Billing Company or Credit Acceptance has received notification from me by telephone, fax, or in writing, of its termination in such time and in such manner as to afford Billing Company reasonable opportunity to act on it. (See Contact Information Below). This Authorization may be suspended by Billing Company or Credit Acceptance without notification to me for reasons dictated by operation of law, rule, regulation, payment in full of the underlying obligation; or for risk management purposes. I understand that this recurring electronic debit program enrollment is voluntary and is not required as a condition to the extension of credit.

(A) CUSTOMER DATA
LAURA LEDBETTER
118 GAYLANE DR
COLUMBUS, MS 39702

(B) BANK ACCOUNT HOLDER
(Complete if different from above)
LAURA LEDBETTER

118 GAYLANE DR
COLUMBUS, MS 39702

(C) BANK ACCOUNT INFORMATION
(Please also attach a voided check)

Name of Bank: BankFirst Financial Services

Bank Routing Number (9 Digits): 084201786

Bank Account Number: XXXX3478

This Account is: ☒Checking (or) ☐Savings (or) ☐Money Market

Signature of Bank Account Holder

Contact Information
To enroll, change or cancel this Authorization, or
if you have questions, please contact us at
Customer Service: 888-857-7377

(D) CREDITOR INFORMATION
Company to be Paid: Credit Acceptance Corporation
Collector Code: CAPS
Please apply my payments to account # XXXX2722

(E) DEBIT INFORMATION
Monthly Payment Amount: $ 293.28
Periodic Payment $ 293.28
Please debit the bank account the following Periodic Payment amount:
$ 293.28 once a month on 8th

☐ Weekly  ☐ Bi-weekly  ☐ Twice Monthly  ☒ Monthly

(F) FIRST DEBIT DATE: 10/08/2015

Due Date. Form must be received by 10/08/2015 in order
to have the account activated and started on time.

After activation, if you need to make changes to your information, you
must call a minimum of two (2) business days prior to your debit date.
For weekly and biweekly payment frequencies, if the calendar month has
an additional pay period, we will make an additional debit from the Bank
Account

DATE: 09/08/2015

Henderson Servicing Center & Training Facility
C/O Customer Service
2460 Paseo Verde Parkway, Suite 110
Henderson, NV 89074
Facsimile Number: 866-610-9984

Hours of Operation: Mon – Fri. 8 a.m. – 11 p.m. and Sat. 8 a.m. – 5 p.m. (Eastern)
OR Access your account at www.creditacceptance.com. Use account number and last 4 digits of driver's SSN.

©2012 Copyright Credit Acceptance Corporation. All Rights Reserved

# EXHIBIT 4

Sep. 8. 2015 4:28PM----GLOBAL AUTO SALES&BROKER ------------ No. 5925· P. 3

Form 78-002-10-7-1-000 (Rev 10/10)

**STATE OF MISSISSIPPI**
DEPARTMENT OF REVENUE
TITLE BUREAU - POST OFFICE BOX 1383
JACKSON, MISSISSIPPI 39215

**APPLICATION FOR CERTIFICATE OF TITLE**

For Title Bureau Use Only

ENTER COMPLETE MISSISSIPPI TITLE NO.

9 DIGITS - EXAMPLE: 1234567-01

First Use Title Attach Motor, or Other Apply to Title

TITLE TYPE: ORIGINAL (0)   **0**   Attach Vbd. Tax, CORRECTION (C)   Attach Mail, Tag TRANSFER (T)   Attach Mail Title LIEN CHANGE (L)

VEHICLE TYPE:   HAY (H)   FLOOD (F)   SALVAGE (S)   REBUILT (R)   OTHER

PASS (P)   **Y**   TAX TRACTOR (B)   TRK (J)   PVT TLR (G)   MOTORCYCLE (C)   MOTOR HOME CAR (N)   TAX TLR (K)

| YEAR | MAKE | MODEL | CYL | NO PASS OR WT | BODY TYPE | COLOR | NEW USED | FUEL | VEHICLE IDENTIFICATION NO (VIN) | ODOMETER CODE |
|------|------|-------|-----|---------------|-----------|-------|----------|------|--------------------------------|---------------|
| (APS) | CHEVROLET | IMPALA | A | 900 | 40A | WHITE | X U | B | 2G1WD5707911998000 | 00-215595 |

FROM WHOM PURCHASED (NAME): GLOBAL AUTO SALES AND BROKERS, INC   STREET/APT./P.O. BOX: 1109 HIGHWAY 72 EAST

CITY: CORINTH   STATE: MS   ZIP CODE: 38834   PREVIOUS TITLE ID   TITLING STATE   TAG NO   EXP YR

OWNER'S (LAST NAME, FIRST, RETAIL, OR MFGR OR) FIRST, INITIAL: LEDBETTER, LAURA   STREET/APT., P.O. BOX: 118 BAYLANE DR

CITY: COLUMBUS   STATE: MS   ZIP CODE: 39702   CO CODE: 440   DATE OF PURCHASE MO 9 DAY 08 YR 15   TRADE IN YES / NO X   PURCHASED OUT OF STATE YES / NO X

1ST LIENHOLDER NAME: CREDIT ACCEPTANCE   STREET ADDRESS: 25505 WEST TWELVE MILE RD

CITY: SOUTHFIELD   STATE: MI   ZIP CODE: 48034   LIENHOLDER NUMBER (Contact Lienholder & get this): 900099148   DATE OF LIEN MO 9 DAY 08 YR 15

2ND LIENHOLDER NAME: NONE   STREET ADDRESS:

CITY   STATE   ZIP CODE   LIENHOLDER NUMBER (Contact Lienholder & get this)   DATE OF LIEN MO DAY YR

NAME OF SELLER: GLOBAL AUTO SALES AND BROKERS, INC   BY _____ AUTHORIZED SIGNATURE

I, THE UNDERSIGNED, CERTIFY THAT THE VEHICLE DESCRIBED ABOVE IS OWNED BY ME AND I HEREBY MAKE APPLICATION FOR A CERTIFICATE OF TITLE FOR SAID MOTOR VEHICLE, AND THIS VEHICLE WILL NOT BE SUBJECT TO LIEN PRIOR TO RECEIPT OF TITLE UNLESS INDICATED ABOVE.
** DISCLOSURE STATEMENT AND PRIVACY ACT NOTICE **
DRIVER'S LICENSE NUMBERS ARE REQUIRED BY STATE LAW AND WILL BE USED IN THE ADMINISTRATION OF STATE MOTOR VEHICLE LAWS, THE COMMISSION IS AUTHORIZED TO COLLECT THE INFORMATION PURSUANT TO 19 U.S.C. § 436(C)(2)(C) AND MISS. CODE ANN, § 63-21-13 TITLES AND REGISTRATION RECORDS MAY BE RELEASED ONLY PURSUANT TO 19 U.S.C. §§ 2721-2725. FAILURE TO PROVIDE THE INFORMATION WILL RESULT IN THE DENIAL OF A CERTIFICATE OF TITLE.

OWNER'S SIGNATURE (PERSONALLY SIGNED IN INK BY OWNER OR OWNER'S AUTHORIZED REPRESENTATIVE)   DRIVER'S LICENSE NUMBER: 800376921

JOINT OWNER'S SIGNATURE (PERSONALLY SIGNED IN INK BY JOINT OWNER OR AUTHORIZED REPRESENTATIVE) (LEAVE BLANK IF NO JOINT OWNER)   DRIVER'S LICENSE NUMBER

I HEREBY CERTIFY THAT THE ABOVE DESCRIBED VEHICLE HAS BEEN PHYSICALLY INSPECTED BY ME AND THAT THE VIN AND DESCRIPTIVE DATA SHOWN ON THIS APPLICATION ARE CORRECT AND FURTHER, I BEFORE OF THIS PERSON SIGNING THE APPLICATION AND WITNESSED HIS SIGNATURE.

DESIGNATED AGENT: GLOBAL AUTO SALES AND BROKERS, INC   BY _____ AUTHORIZED SIGNATURE

DESIGNATED AGENT NO: 46328800000   DATE: 9/08/15   APPLICATION NUMBER: 3257777 5

**See reverse of copy 4 for important information**   **DEPARTMENT OF REVENUE'S COPY**

**PREPARE APPLICATION USING TYPEWRITER OR COMPUTER PRINTER ONLY**

87000/8435 00012, RR Donnelley  All Rights reserved - 0007

# EXHIBIT 5

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## RETAIL INSTALLMENT CONTRACT

ACCOUNT # ███2722                                                         LOT # F8N

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| LAURA LEDBETTER<br>118 GAYLANE DR<br>COLUMBUS, MS 39702 | N/A | GLOBAL AUTO SALES & BROKERS INC<br>1109 HWY 72 EAST<br>CORINTH, MS 38834 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2009 Chevrolet | Impala 4D Sedan | WHITE | 2G1WD57C791199800 | 215,595 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of $1,350.00 is |
|---|---|---|---|---|
| 23.99 % | $ 4,547.10 | $ 8,650.50 | $ 13,197.60 | $ 14,547.60 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 45 | $ 293.28 | October 08, 2015 and same date of each following month. |

Security: You are giving a security interest in the goods or Vehicle being purchased.

Late Charge: If a payment is more than 10 days late, You will be charged $5 or 5% of the payment, whichever is less.

Prepayment: If You pay off early, You may be entitled to a refund of part of the Finance Charge.

Additional Information: Please read this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

PROPERTY INSURANCE: You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $500.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

ARBITRATION NOTICE: PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION CLAUSE CONTAINED IN THIS CONTRACT.

ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION CLAUSE SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

Buyer's Initials _____ LL _____

Buyer's Initials _____

MISSISSIPPI CREDIT ACCEPTANCE CORPORATION (06-12)<br>© 2012 Credit Acceptance Corporation.<br>All Rights Reserved.

PAGE 1 of 5

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/09/2015

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ITEMIZATION OF AMOUNT FINANCED

1. **Cash Price** (including accessories and improvements to the Vehicle) .......................................... $ 8,655.00 (1)
2. **Sales Tax** .......................................................................................................................... $ 445.50 (2)

3. Down-Payment Calculation:   Cash Down Payment ........................... $ 1,350.00 (A)
   Trade-In Description:   Gross Trade-In .......... $ _____ N/A (B)
   Make: N/A
   Model: N/A   Payoff Made by Seller   $ _____ N/A (C)
   Net Trade-In (if negative number, insert "0" in line 3(D) and itemize difference in 5(E) below) (B-C) $ 0.00 (D)
   Total Down Payment ........................................................(A + D) $ 1,350.00 (3)

4. **Unpaid Balance of Cash Price** (1+ 2 less 3) ...................................................................... $ 7,750.50 (4)

5. Other Charges Including Amounts Paid to Others on Your Behalf:
   *(NOTICE: A portion of these charges may be paid to or retained by Us.)
   A. *Cost of Required Physical Damage Insurance Paid to Insurance Company ........................ $ N/A (A)
   B. *Cost of Optional Extended Warranty or Service Contract Paid to the Company named below ...... $ N/A (B)
   C. Cost of Fees Paid to Public Officials for Filing, Recording & Perfecting Security Interest in Vehicle $ N/A (C)
   D. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ............... $ 15.00 (D)
   Other Charges (Seller must identify who will receive payment and describe purpose)
   E. to N/A _____ for lien or lease payoff ................................................ $ N/A (E)
   F. *to Western Diversified Services, Inc. for Optional GAP Protection ....................... $ 630.00 (F)
   G. *to THE SELLER _____ for Global Auto Sales & Brokers, Inc $ 255.00 (G)
   H. *to N/A _____ for N/A _____ $ N/A (H)
   I. *to N/A _____ for N/A _____ $ N/A (I)
   J. *to N/A _____ for N/A _____ $ N/A (J)
   Total of Other Charges and Amounts Paid to Others on Your Behalf .............................. $ 900.00 (5)
6. **Less Prepaid Finance Charge** ................................................................................... $ N/A (6)
7. **Amount Financed** - Unpaid Balance (4 + 5 less 6) ............................................................. $ 8,650.50 (7)
8. **Finance Charge** ..................................................................................................... $ 4,547.10 (8)
9. **Total of Payments** - Time Balance (7 + 8) ...................................................................... $ 13,197.60 (9)

---

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price: $ N/A   Term: N/A   Company: N/A

***NOT PURCHASED - DO NOT SIGN***

Buyer's Signature _____ Date _____   Buyer's Signature _____ Date _____

**GAP PROTECTION:** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5F of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ 630.00   Term: 45 Mos.   Provider: Western Diversified Services, Inc.

*Laura Ledbetter*   09/08/2015
Buyer's Signature _____ Date _____   Buyer's Signature _____ Date _____

Notice to the Buyer: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract You sign.

You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.

Buyer's Signature: x   *Laura Ledbetter*   Buyer's Signature: x _____

Seller: GLOBAL AUTO SALES & BROKERS INC   By: *Terry Gramling*   Title: AGENT

This Contract is signed by the Seller and Buyer(s) hereto this   8th   day of   September   2015

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions as set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: GLOBAL AUTO SALES & BROKERS INC   By: *Terry Gramling*   Title   AGENT

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** If a check is given by You to Us is dishonored by Your bank, We may make a separate demand that You pay a returned check fee equal to the amount of any fee or charge imposed on Us as a result of the refunded check, not to exceed $15.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. We will retain a $10.00 acquisition fee from any refund credit. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Required Physical Damage Insurance.** You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

MISSISSIPPI CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 5

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

Buyer's Initials

Buyer's Initials

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Starter Interruption Device and GPS.** You understand and agree that If You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default In order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle Is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle Is stored, so long as It Is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It Is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle In Its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected In our records, In a reasonable period before the date of the intended sale or transfer (or such other period of time as Is required by law), if the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of the sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay It to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for It. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

**Collection Costs.** If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will pay the attorney's fee not to exceed 15% of the amount actually due and unpaid at the time the balance of the Contract Is accelerated and the entire amount thereof is declared to be due, plus court costs.

> WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY EXPRESS WARRANTIES COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT. THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.

**Delay In Enforcing Rights and Changes of this Contract.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. Any change In the terms of this Contract must be In writing and signed by Us. No oral changes are binding. If any part of this Contract is not valid, all other parts will remain enforceable.

**Interest After Maturity.** You further agree to pay interest at the Annual Percentage Rate stated on page 1 of this Contract or at the highest rate permitted by applicable law, on any amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

Judgment Rate of interest on any judgment awarded on this Contract will be at the Annual Percentage Rate stated on page 1 of this Contract, or at the highest rate permitted by applicable law.

**Governing Law.** The terms of this Contract are governed by the law of the state of the Seller's address shown on page 1 of this Contract, except to the extent preempted by applicable federal law.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), Its successors and assigns, pursuant to and in accordance with the terms and conditions set forth In the existing dealer agreement between Seller and Assignee In effect on the date hereof. Seller gives Assignee full power, either In Assignee's name or In Seller's name, to take all actions which Seller could have taken under this Contract, in order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth In the existing dealer agreement.

## AGREEMENT TO ARBITRATE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes In front of one or more neutral persons, Instead of having a trial In court In front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party Is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject:** If You don't want this Arbitration Clause to apply, You may reject It by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice Is only effective If It is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent In has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, It will be effective as of the date of this Contract.

⇨ Buyer's Initials _____

Buyer's Initials _____

MISSISSIPPI CREDIT ACCEPTANCE CORPORATION (08-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 4 of 5

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/03/2015

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You must be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes. In the event that the Class Action Waiver is determined to be invalid or unenforceable then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com ; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Arbitrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

➡ Buyer's Initials _____  _LL_

Buyer's Initials _____

MISSISSIPPI CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 5

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 6

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

CREDIT REPORT AUTHORIZATION FORM

**Credit Acceptance**
*We change lives!*

Dealership | GLOBAL AUTO SALES & BROKERS INC | Lot # | F8N

## Driver Information (Applicant)

| SSN | | DOB | | Mr/Ms | Optional |
|---|---|---|---|---|---|
| | ●●●●9255 | | ●●●/1955 | | |

| First Name | LAURA | MI | | Last Name | LEDBETTER | Suffix | |
|---|---|---|---|---|---|---|---|

| Street Number | 118 | Street Name | GAYLANE DR | Apt | |
|---|---|---|---|---|---|

| Zip Code | 39702 | City | COLUMBUS | State | MS |
|---|---|---|---|---|---|

## 2nd Signer Information (Co-Applicant)

| SSN | | DOB | | Mr/Ms | Optional |
|---|---|---|---|---|---|

| First Name | | MI | | Last Name | | Suffix | |
|---|---|---|---|---|---|---|---|

| Street Number | | Street Name | | Apt | |
|---|---|---|---|---|---|

| Zip Code | | City | | State | |
|---|---|---|---|---|---|

COPY OF ELECTRONIC ORIGINAL

**Maine Applicants:** You are required by the terms of the contract to insure the motor vehicle which is the subject of this credit transaction. You have the right to free choice in the selection of the agent and insurer through or by which the insurance is to be placed, including the right to choose an agent or broker whether or not that agent or broker is affiliated with the creditor. Obtaining insurance products from a particular agent or broker does not affect credit decisions by the creditor regarding you, unless the insurance product violates the terms of the extension of credit regarding the adequacy of coverage or is otherwise not approved by the creditor

**New York Applicants:** In connection with your application for credit, a consumer report (credit report) may be requested. On your request, we will advise you if the report was actually ordered, and if so, the name and address of the agency that furnished the report.

**Rhode Island Applicants:** Credit reports may be obtained in connection with your application.

**Vermont Applicants:** If and after my contract is assigned to Credit Acceptance, I also authorize and give consent to Credit Acceptance to obtain my credit report from any Credit Reporting Agency at any time during the term of my contract for any purpose whatsoever, including but not limited to for prescreening, as defined and permitted from time to time by the Federal Trade Commission; for reviewing my contract; to defer or extend my payments or due date under my contract; to take collection action on my contract; or for other legitimate purposes associated with my contract.

I certify that the above information is complete and accurate. I authorize and give Dealership and Credit Acceptance my consent to obtain my credit report from any Credit Reporting Agency and complete an investigation of my credit.

I understand and acknowledge that if I ask, I will be informed if a credit report has been requested in connection with any credit application I submit for credit, and the name and address of the Credit Reporting Agency that furnished the report.

Driver Signature | *Laura Ledbetter* | Date | 09/08/2015

2nd Signer Signature | | Date |

© 2007 Copyright Credit Acceptance Corporation. All Rights Reserved

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 7

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

**CREDIT APPLICATION**

IMPORTANT NOTICE: To obtain a copy of the Credit Acceptance Corporation Privacy Policy, please call toll-free 877-288-6357

Application Type [X] Individual  [ ] Joint for  **LAURA LEDBETTER**  Dealer **GLOBAL AUTO SALES & BROKERS INC**  Lot # **F8N**

## Customer Information and Physical Address (Complete a separate application for applicant and joint applicant.)

| SSN | ● ● ● - ● ● - 9255 | DOB ● ● / ● ● / 1955 | Options: If you desire, please choose one: [ ] Mr [ ] Mrs [ ] Ms | Maiden Name |

First Name **LAURA**  MI  Last Name **LEDBETTER**  [ ] II [ ] III [ ] IV [ ] Sr [ ] Jr

Street Number **118**  Street Name **GAYLANE DR**  Apt  Primary Driver [X] Yes [ ] No

City **COLUMBUS**  State **MS**  Zip Code **39702**

| Primary Phone | 662 | 242 | 7975 | Extension | [X] Cell [ ] Home [ ] Other | Email |
| Secondary Phone | | | | Extension | [ ] Cell [ ] Home [ ] Work [ ] Other | Email |
| Phone | | | | Extension | [ ] Cell [ ] Home [ ] Work [ ] Other | Email |
| Phone | | | | Extension | [ ] Cell [ ] Home [ ] Work [ ] Other | Email |

| Vehicle Insurer Name | **PROGRESSIVE INS** | Insurer Phone | 877 | 246 | 7814 | Make Credit Acceptance loss payee/lienholder |
| Policy # | | Agent | | Driver License # | |

## Mailing Address (If different than current residence)

Street Number **118**  Street Name **GAYLANE DR**  Apt  City **COLUMBUS**  State **MS**  Zip Code **39702**

## Previous Address

Street Number  Street Name  Apt  City  State  Zip Code

## Residence Information

Residence Owned By: [ ] Self or Spouse [X] Landlord [ ] Military [ ] Relative  At Residence Since: 06 / 2013

[ ] Savings [X] Checking [ ] Prepaid Debit Card  Bank Name **BANK FIRST**

Landlord Name **MCCARTER REALTY**  Street Number  Street Name  Phone 662 328 7600  Extension

## Primary Income Information (Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.)

Income Type [ ] Employee (Gets W2) [ ] Fixed Income [ ] Unemployed [ ] Cash Income [ ] Self Employed (No W2) [ ] Temp Service Employee

Monthly Pay $ **1,064.00**  Start/Hire Date 08 / 15 / 1999

Employer Name  Occupation

Street Number  Street Name  Suite  City  State  Zip Code

Employment Verification Phone  Extension

Physical Work Location Name  Physical Work Location Phone  Extension

Street Number  Street Name  Suite  City  State  Zip Code

## Secondary Income Information (Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.)

Income Type [ ] Employee (Gets W2) [ ] Fixed Income [ ] Unemployed [ ] Cash Income [ ] Self Employed (No W2) [ ] Temp Service Employee

Monthly Pay $ **288.00**  Start/Hire Date 08 / 15 / 1999

Employer Name  Occupation

Street Number  Street Name  Suite  City  State  Zip Code

Employment Verification Phone  Extension

Physical Work Location Name  Physical Work Location Phone  Extension

Street Number  Street Name  Suite  City  State  Zip Code

COPY OF ELECTRONIC ORIGINAL

Multi-State - Credit Application (11/14)
© 2012 - 2014 Copyright Credit Acceptance Corporation. All Rights Reserved.

Pages 1 of 2

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015.

Copy of Electronic Original

Not required to mail or fax this copy to Credit Acceptance

## CREDIT APPLICATION

IMPORTANT NOTICE: To obtain a copy of the Credit Acceptance Corporation Privacy Policy, please call toll-free 877-288-6357

**Third Income Information** (Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.)

| Income Type | ☐ Employee (Gets W2) | ☐ Fixed Income* | ☐ Unemployed | ☐ Cash Income |
| | ☐ Self Employed (No W2) | ☐ Temp Service Employee | | |

Monthly Pay $ 100.00  Start/Hire Date 05 / 15 / 1999

Employer Name _____   Occupation _____

Street Number ____ Street Name _____ State ____ City _____ State ____ Zip Code ____

Employment Verification Phone _____ Extension ____

Physical Work Location Name _____   Physical Work Location Phone _____ Extension ____

Street Number ____ Street Name _____ State ____ City _____ State ____ Zip Code ____

**California Applicants:** If you are married, you may apply for a separate account.

**Ohio Applicants:** The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**WISCONSIN RESIDENTS ONLY:** Notice to married applicants: No provision of any marital property agreement, a unilateral statement under Wis. Stat. § 766.59 or a court decree under Wis. Stat. § 766.70 adversely affects the interest of the creditor unless the creditor, prior to the time the credit is granted, is furnished a copy of the agreement, statement or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. The credit being applied for, if granted, will be incurred in the interest of my marriage or family. I understand that the creditor may be required by law to give notice of the credit transaction to my spouse.

I understand that my application will be submitted to Credit Acceptance Corporation ("Credit Acceptance") for review in connection with the assignment of a sales finance contract written, or to be written, in connection with my vehicle purchase. By signing below I authorize Credit Acceptance to: 1) obtain a report of my credit record and use the information from any such report in the review noted above; and 2) verify any of the information provided by me on this application.

I certify that the above information is complete and accurate. I understand and acknowledge that Credit Acceptance will retain this application whether or not it is approved.

I also understand and acknowledge that if I ask, I will be informed if a credit report has been requested in connection with this application for credit, and the name and address of the Credit Reporting Agency that furnished the report.

**\*\* Email and Cellular Communication Consent:** By signing below I authorize and give consent to Credit Acceptance to use the email address and cellular telephone numbers I have provided on this application or which Credit Acceptance obtains to communicate with me for any purpose whatsoever, including but not limited to communication regarding my account activity, status and to collect any debt obligation I owe to Credit Acceptance. This authorization includes consent for Credit Acceptance to make calls to any of my current or future cellular telephone numbers using any automatic telephone dialing systems or artificial or prerecorded voice.

**Spousal Consent:** By signing below I authorize and give consent to Credit Acceptance to discuss my account with my spouse, if applicable, including discussing my account activity, status and payment arrangements.

Applicant Signature  *Laura Ledbetter*   Date 09/08/2015

Multi-State - Credit Application (11/14)
© 2012 - 2014 Copyright Credit Acceptance Corporation. All Rights Reserved.

Page 2 of 2

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 8

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance



## CREDIT ACCEPTANCE CORPORATION DISCLOSURE FORM

LAURA LEDBETTER _____ (Buyer)/ _____ (Co-Signer) (both hereinafter referred to as "I"), are considering entering into a "Retail Installment Sales Contract" (hereinafter referred to as "Contract") with GLOBAL AUTO SALES & BROKERS INC (hereinafter referred to as "Car Dealership"). I have been given an opportunity to read both sides of the Contract, which has been completely filled in, and to ask all questions I may have concerning the terms and conditions of the Contract. I understand that this Contract contains the entire agreement between I and Car Dealership and that the Car Dealership will be assigning this Contract to Credit Acceptance Corporation ("Credit Acceptance"). I understand that any changes to this Contract must be in writing and signed by I and Credit Acceptance. Oral changes are not binding.

I understand that the price of vehicle is the price which is set forth in the Contract and that I personally negotiated this price with the Car Dealership. This "cash price" is the price that the Car Dealership would have charged had I purchased the vehicle with cash. I further represent that the Car Dealership did not quote me a lower cash price for the vehicle and that the Car Dealership did not increase the price of the vehicle because I was purchasing the vehicle on credit or because the Contract would be assigned to Credit Acceptance.

I understand that the Annual Percentage Rate ("APR") is the rate set forth in the Contract and means the cost of my credit as a yearly rate. I understand that the APR may be negotiable with the Car Dealership and represent I had the opportunity to negotiate the APR with the Car Dealership.

I understand that Credit Acceptance will hold a lien on the vehicle I am purchasing. I understand that Credit Acceptance will be servicing my account and that the assignment of the Contract to Credit Acceptance will not relieve me of any obligation under the Contract. Unless I entered into a contract with a third party vendor to remit my payments under Contract to Credit Acceptance on my behalf, I understand that Credit Acceptance will be sending me a payment book or statement that will be used by me to make my payments under the Contract to Credit Acceptance.

I understand that Credit Acceptance and the Car Dealership have an agreement that provides that Credit Acceptance will pay the Car Dealership a portion of the amount I actually owe under the Contract and that this amount is sometimes referred to as a "discount". I understand that the Car Dealership that sold me the vehicle may retain an interest in the payments I make to Credit Acceptance and after the amounts initially paid to the Car Dealership by Credit Acceptance are recovered by Credit Acceptance, the Car Dealership may begin to receive part of the money I pay on the Contract.

I understand that the Car Dealership's agreement with Credit Acceptance does not in any way affect the amount of my obligation under the Contract as I purchased the subject vehicle on terms acceptable to me with full and complete knowledge that Credit Acceptance will advance to the Car Dealership only a portion of the amount I have actually agreed to pay and that Credit Acceptance will retain the "discount".

If the purchase price of the vehicle includes ancillary products, such as a service contract; extended warranty; GAP product; credit life, accident and health insurance; collision insurance coverage, and/or other related goods and services, I understand that I am not required to purchase these goods and services in order to buy the car on credit and that these goods and services were sold to me at the fair market retail value and have not in any way been overstated or inflated and that these goods and services were sold to me at the same price as they would have been sold by the Car Dealership in a cash transaction. I understand that the Car Dealership, Credit Acceptance or a subsidiary of Credit Acceptance may receive a portion of the proceeds of the sale of these ancillary products as a commission, administrative fee reimbursement, earned premium or fee.

I further acknowledge that if I enrolled in an electronic payment program where my payments are to be automatically withdrawn from my bank account, that this program is optional and is not required in order to finance the purchase of the vehicle.

I ACKNOWLEDGE THAT I HAVE READ AND UNDERSTAND THIS DOCUMENT.

BUYER: _Laura Ledbetter_____     CO-SIGNER: _____
SIGNATURE                          SIGNATURE

DATED: 09/08/2015            DATED: _____

CAR DEALERSHIP CERTIFICATION: Car Dealership hereby represents to Credit Acceptance that it has explained the information in this document to the Buyer and Co-Signer and that it has no knowledge, information or belief that would cause the Car Dealership to believe that any of the representations of Buyer set forth herein are inaccurate or incomplete in any respect.

CAR DEALERSHIP: GLOBAL AUTO SALES & BROKERS INC

BY: _Terry Gramling_____

ITS: AGENT _____

DATED: 09/08/2015

© 2008 Credit Acceptance Corporation (8/13/08). All Rights Reserved
The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 9

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance



## CONSENT AND AUTHORIZATION FORM

In connection with my credit application submitted to Credit Acceptance Corporation, a Michigan corporation, and/or any of its affiliates, subsidiaries or divisions ("Credit Acceptance") or in connection with my retail installment contract assigned to Credit Acceptance, the undersigned (hereinafter referred to as "I") hereby consents and authorizes any person, entity, current employer, prior employer, and all others to release and/or disclose to Credit Acceptance any and all personal information, nonpublic personal information as that term is defined in the Gramm-Leach-Bliley Act, Title V, and applicable regulations thereto ("GLB Act"), employment information and/or credit information (hereinafter referred to as "Information") concerning the undersigned.

I hereby release any such person, entity, current employer, prior employer, and all others from any and all liability that may result in furnishing the Information. I also release Credit Acceptance and any person, entity, current employer, prior employer, and all others from any obligation to provide the undersigned with written notification of such release and/or disclosure of such Information.

I also consent to and authorize Credit Acceptance's use of original or copies of this executed form as valid consent and authorization.

I FURTHER AUTHORIZE, INSTRUCT, AND GRANT PERMISSION TO CREDIT ACCEPTANCE CORPORATION TO SHARE WITH THE SELLING DEALER AT ANY TIME MY PAYMENT PERFORMANCE UNDER THE ASSIGNED RETAIL INSTALLMENT CONTRACT, INCLUDING, THE TRANSACTION HISTORY.

My signature below certifies that I have read, that I understand, and that I have voluntarily executed this form.

Signature: _Laura Ledbetter_

Print/Type Name: LAURA LEDBETTER

Social Security No: ▆▆▆-9255

Date of Birth: ▆▆▆/1955

25505 West Twelve Mile Road
Southfield MI 48034
www.creditacceptance.com
(248) 353-2700

©2006 Credit Acceptance Corporation
All Rights Reserved
September 2006

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 10

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance



# GAP Acceptance of Coverage

Acceptance of Coverage

Guaranteed Asset/Auto Protection (GAP) has been explained to me in conjunction with the purchase of my car on credit. After hearing the explanation, **I WOULD** like to purchase GAP Coverage in accordance with the terms and conditions of the insurance or waiver certificate provided to me from the dealer.

**NOTICE: GAP is VOLUNTARY**, and **NOT REQUIRED** in order to buy this car on credit. **GAP IS NOT** automobile insurance and therefore does not provide general liability or property damage coverage and does not fulfill the requirements of any financial responsibility law.

COPY OF ELECTRONIC ORIGINAL

*Laura Ledbetter*
Signature of Debtor      LAURA    LEDBETTER

Signature of Co-Debtor

Witness    *Terry Gramling*    Date 09/08/2015

© 2012 Credit Acceptance Corporation. All Rights Reserved.
CAGAP Acceptance 4/05
The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

# EXHIBIT 11

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance ONLY (Rev. 7/16)

# GUARANTEED ASSET PROTECTION (GAP) ADDENDUM

| INFORMATION PAGE | | | ADDENDUM NO. |
|---|---|---|---|
| | | | 05-44-1 #10000562070 |

| DEALER/CREDITOR NAME | ADDRESS | CITY, STATE | ZIP |
|---|---|---|---|
| GLOBAL AUTO SALES & BROKERS INC | 1109 HWY 72 EAST | CORINTH, MS | 38834 |

| DEALER/CREDITOR NO. | FINANCING AGREEMENT DATE | DATE VEHICLE PURCHASED/LEASED | CUSTOMER/BORROWER PHONE NUMBER |
|---|---|---|---|
| F8N | 09/08/2015 (GAP EFFECTIVE DATE) | 09/08/2015 | ( 662 ) 242-7975 |

| LAST NAME OF CUSTOMER/BORROWER | FIRST NAME | MIDDLE INITIAL |
|---|---|---|
| LEDBETTER | LAURA | |

| STREET ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|
| 118 GAYLANE DR | COLUMBUS | MS | 39702 |

| VEHICLE IDENTIFICATION NUMBER (17 CHARACTERS) | YEAR | MAKE | MODEL |
|---|---|---|---|
| 2G1ND57C791199800 | 2009 | Chevrolet | Impala |

| FINANCIAL INSTITUTION/LENDER | ADDRESS | CITY, STATE | ZIP |
|---|---|---|---|
| CREDIT ACCEPTANCE CORP. | 25505 W 12 Mile Rd | Southfield, MI | 48034 |

| PHONE NUMBER | TERM (MONTHS)* | AMOUNT FINANCED OR LEASED* | | APR |
|---|---|---|---|---|
| ( 248 ) 353-2700 | 45 (CANNOT EXCEED 84 MONTHS) | $8,650.50 (CANNOT EXCEED $100,000) | ☒ LOAN / RETAIL INSTALLMENT | 23.99 |

| PRIMARY INSURANCE DEDUCTIBLE | DOWN PAYMENT | MSRP/NADA * | GAP ADDENDUM PURCHASE PRICE | RETAIL PRICE |
|---|---|---|---|---|
| N/A (MAXIMUM BENEFIT $1,000) | $1,350.00 | N/A (MAXIMUM LOAN TO VALUE 160%) | $630.00 | $8,655.00 |

| TYPE OF VEHICLE ASSET: ☐ AUTO - PP | ☐ NEW ☐ PREOWNED | ODOMETER READING 215,595 |
|---|---|---|

*This GAP Addendum amends the FINANCING AGREEMENT and is available only at the time the FINANCING AGREEMENT is executed and ONLY if monthly payments are required, the Amount Financed or Leased does not exceed $100,000, the Term does not exceed 84 months, and the maximum LOAN TO VALUE does not exceed 150% of MSRP if new and NADA if pre-owned. Amount for lease is the total monthly payments plus residual value. Any VEHICLE with a BRANDED TITLE is not eligible. This GAP Addendum is not a contract of insurance, does not provide general liability coverage and does not fulfill the requirements of any financial responsibility law. GAP is not a substitute for collision or property damage insurance. You might not need GAP depending on how much of a down payment (including trade-in value) You made on Your VEHICLE, the terms of Your FINANCING AGREEMENT, the make of VEHICLE and other considerations. The GAP BENEFIT may decrease over the term of Your FINANCING AGREEMENT. The cost of this GAP Addendum is not regulated. It is your responsibility to determine whether the cost of the GAP Addendum is reasonable in relation to the protection afforded. No GAP BENEFIT is provided for that portion of the net payoff that results from the amount financed/leased cost exceeding the maximum LOAN TO VALUE stated above at the inception date of the GAP Addendum and will be deducted from the payable GAP BENEFIT due. If there is any other coverage for the VEHICLE, this GAP Addendum shall be considered excess and will not apply or contribute to the payment of any loss until the benefits under these other plans have been exhausted. IF A REQUEST FOR GAP BENEFIT UNDER THIS GAP ADDENDUM HAS NOT BEEN MADE, YOU MAY CANCEL THIS ADDENDUM AND RECEIVE A FULL REFUND WITHIN THE FIRST 30 DAYS AND A PARTIAL REFUND AS DETERMINED BY THE RULE OF 78TH'S METHOD LESS A $0 CANCELLATION FEE THEREAFTER. THIS REFUND WILL BE APPLIED TO THE FINANCING AGREEMENT. Any refund of the GAP Addendum purchase price that was included in the financing of the motor vehicle may be applied by the Dealer/Creditor as a reduction of the overall amount owed under the FINANCING AGREEMENT, rather than applying the refund strictly to the purchase price of the GAP Addendum. There is no responsibility to process a refund until written notice is sent by You as provided in Section #5. If You do not receive Your refund, please call 1-800-323-5771 ext. 6181. Enrollment in this program is VOLUNTARY and is NOT REQUIRED as neither the extension of credit, the terms of the credit, nor the terms of the related motor vehicle sale or lease, maybe conditioned upon the purchase of GAP. This GAP Addendum will cost You the amount shown as the GAP Addendum Purchase Price above for the Term shown above. You may obtain GAP from alternate sources. THE DEALER/CREDITOR WILL CANCEL CERTAIN AMOUNTS CUSTOMER/BORROWER OWES UNDER THE FINANCING AGREEMENT IN THE CASE OF A CONSTRUCTIVE TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE GAP ADDENDUM. Your signature acknowledges that You request the (GAP) ADDENDUM and have read and understand the terms of this Addendum and any attachments.

DEALER/CREDITOR: GLOBAL AUTO SALES & BROKERS INC
Dealership Name

Terry Gramling / 09/08/2015
Signature / Date

Program Administrator:
GAP ADMINISTRATION
1-800-323-5771 ext. 6181
P.O. Box 770, Deerfield, IL 60015

CUSTOMER/BORROWER: LAURA LEDBETTER
Print Name

Laura Ledbetter / 09/08/2015
Signature / Date

CO-CUSTOMER/BORROWER: _____
Print Name

_____
Signature / Date

GAP-ADDC2411-CF (5/08)

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

1.  **DEFINITIONS**
    For the purpose of this GAP Addendum, the following terms shall mean:

    **ACTUAL CASH VALUE** means the retail value of the VEHICLE on the DATE OF LOSS, prior to its physical damage or theft, as determined by the PRIMARY CARRIER. If no PRIMARY CARRIER exists or the PRIMARY CARRIER has been declared insolvent or for any instance where the PRIMARY CARRIER's total loss calculation is reduced due to limited liability coverage, the retail value will be determined utilizing the National Automobile Dealers Association (NADA) Official Used Car Guide, adjusted for applicable mileage and equipment. If no NADA retail value is available, the value will be determined using the best information available.

    **ACTUAL PAYOFF BALANCE** means the payoff balance provided by the assigned Financial Institution/Lender as of the DATE OF LOSS minus any and all unearned finance or lease charges, late charges, DELINQUENT PAYMENTS and any amount added to the balance after the inception date of the FINANCING AGREEMENT.

    **BRANDED TITLE** means any certificate of ownership that currently is or has previously been declared as defective. This may include but is not limited to notations of Salvage, Rebuilt, Flood, or Lemon.

    **COMMERCIAL USE** means the use of the VEHICLE for transportation of persons or property for hire, compensation, profit or in the furtherance of a commercial enterprise.

    **CONSTRUCTIVE TOTAL LOSS** means the direct and accidental loss of the VEHICLE resulting in the inability to repair a VEHICLE due to severe damage or a theft as determined by the PRIMARY CARRIER. If no PRIMARY CARRIER exists, then CONSTRUCTIVE TOTAL LOSS shall mean the cost to repair the VEHICLE exceeds its ACTUAL CASH VALUE or shall mean an UNRECOVERED THEFT.

    **CUSTOMER/BORROWER** means the purchaser or lessee of the VEHICLE, as listed in the Information Page of this GAP Addendum, and is referred to as You or Your throughout the GAP Addendum.

    **DATE OF LOSS** means the exact day on which the VEHICLE is reported stolen or incurs physical damage that is severe enough to be deemed a CONSTRUCTIVE TOTAL LOSS.

    **DELINQUENT PAYMENTS** means any payment as described in the FINANCING AGREEMENT, which remains unpaid for a period of more than fifteen (15) days after the due date stated in the FINANCING AGREEMENT.

    **FAMILY MEMBERS** means a person related to You by blood, marriage or adoption including a step child, ward child or foster child.

    **FINANCING AGREEMENT** means the contract that represents the written understanding between the Dealer/Creditor and You for the purchase or lease of the VEHICLE and which sets forth the terms, conditions, inception date, and expiration date of the contract.

    **GAP BENEFIT** means under the terms of the FINANCING AGREEMENT, as amended by this Addendum, if the VEHICLE is deemed a CONSTRUCTIVE TOTAL LOSS or is an UNRECOVERED THEFT, You are entitled to a benefit under this Addendum.

    **LOAN TO VALUE** means if the VEHICLE is purchased new, the percentage amount is determined by dividing the total amount financed according to the FINANCING AGREEMENT by the Manufacturer's Suggested Retail Price (MSRP). If the VEHICLE is purchased pre-owned, the percentage amount is determined by dividing the total amount financed according to the FINANCING AGREEMENT by the National Automobile Dealers Association (NADA) Official Used Car Guide average retail value as of the origination of the FINANCING AGREEMENT.

    **PRIMARY CARRIER** means the insurance company selected by You to provide the physical damage coverage on the VEHICLE or the insurance carrier liable for the CONSTRUCTIVE TOTAL LOSS of Your VEHICLE.

    **SCHEDULED PAYOFF BALANCE** means the total amount outstanding and is determined by an amortization schedule as of the DATE OF LOSS. The amortization schedule is based on the original terms of the FINANCING AGREEMENT and will assume all payments were made on the due date. For a lease, the SCHEDULED PAYOFF BALANCE is the remaining payments owed, less applicable taxes and rental fees, plus the residual value as of the DATE OF LOSS. The total amount outstanding is based on the original terms of the FINANCING AGREEMENT and assumes all payments were made on the due date.

    **UNRECOVERED THEFT** means the covered VEHICLE is stolen and not recovered within thirty (30) days after the DATE OF LOSS.

    **VEHICLE** means the four-wheeled private passenger car, van, pickup or light truck as listed in the Information Page of this Addendum, not to exceed a gross vehicle weight rating (GVWR) of 12,500 lbs.

2.  **GAP BENEFIT CALCULATION**
    The GAP BENEFIT cancels debt and is the lesser of the SCHEDULED PAYOFF BALANCE or the ACTUAL PAYOFF BALANCE on the DATE OF LOSS minus:
    A.  Any refunds available on the other items financed in the FINANCING AGREEMENT;
    B.  The amount of Your PRIMARY CARRIER insurance deductible that exceeds $1000 if applicable;
    C.  The CONSTRUCTIVE TOTAL LOSS settlement made by the PRIMARY CARRIER or the ACTUAL CASH VALUE if no PRIMARY CARRIER coverage is in force on the DATE OF LOSS;
    D.  Any amount deducted from the PRIMARY CARRIER's CONSTRUCTIVE TOTAL LOSS settlement for prior damage remaining unrepaired at the time of CONSTRUCTIVE TOTAL LOSS, value of owner retained salvage, towing fees, inspection fees, storage charges or any other unrelated deductions;
    E.  The amount in excess of 160 percent of the LOAN TO VALUE.

    The maximum GAP BENEFIT shall be no more than $50,000. The GAP BENEFIT will only apply one time for each VEHICLE. Assignment of the FINANCING AGREEMENT by the Dealer/Creditor shall not in any way affect the amendment of such

GAP-ADDC2411-CF (5/08)

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 09/08/2015

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

FINANCING AGREEMENT provided for in the GAP Addendum. This GAP Addendum is transferable if there is a transfer of equity.
If the VEHICLE is repossessed, the assigned Financial Institution/Lender on the Information Page is authorized to initiate cancellation and receive the refund, as the sole payee.

3. **GAP BENEFIT PROCEDURE**
At the time of early termination of such FINANCING AGREEMENT due to CONSTRUCTIVE TOTAL LOSS or UNRECOVERED THEFT of such VEHICLE, You shall provide to the Dealer/Creditor's GAP Administration, at the address shown below, within ninety (90) days, the following:

A. Your copy of this GAP Addendum.
B. Copy of any settlement statement of the PRIMARY CARRIER for the loss, including a copy of the settlement check, worksheet explaining how the settlement amount was calculated, the DATE OF LOSS and Your deductible.
C. Copy of police report. If no police report is available, a sworn statement indicating: no police report was filed, the DATE OF LOSS, detailed description of the loss, and VEHICLE information including the vehicle identification number.
D. Copy of the FINANCING AGREEMENT.
E. A complete loan/retail installment payment history and statement from the assigned Financial Institution/Lender showing the net payoff as of the DATE OF LOSS. If no payoff is provided from the assigned Financial Institution/Lender or the payment history is incomplete, the loan/retail installment sales contract will be amortized based on the original terms or if leased, a complete lease payment history from the assigned Financial Institution.
F. Copy of the documents indicating the refund amounts for any items financed in the FINANCING AGREEMENT.
G. A completed GAP Benefit Form, obtained from the GAP Administration.
H. Any other reasonable documentation requested by the GAP Administration in order to determine the GAP BENEFIT amount.
I. Upon reasonable advance notice, the holder may inspect the retail buyer's vehicle to determine pre-damage and mileage condition upon a CONSTRUCTIVE TOTAL LOSS of the VEHICLE.
J. This information should be sent to:
GAP BENEFITS
P.O. BOX 770
DEERFIELD, IL 60015-0770

If You include proof that the FINANCING AGREEMENT has been satisfied, the GAP BENEFIT will be accorded to You. If this proof is not provided, the assigned Financial Institution/Lender will be named payee of the GAP BENEFIT.

Any questions can be directed to the GAP Administration at 1-800-323-5771 ext. 6170.

A REQUEST FOR A GAP BENEFIT MUST BE SUBMITTED WITHIN NINETY (90) DAYS OF THE FOLLOWING WHICHEVER OCCURS LATER: A) THE DATE THE PRIMARY CARRIER'S LOSS SETTLEMENT IS GIVEN TO YOU; OR B) THE DATE THE FINANCIAL INSTITUTION/LENDER DETERMINED THE CLOSE-OUT BALANCE OR NET PAYOFF AMOUNT.

ALL DOCUMENTS LISTED ABOVE IN SECTION 3 MUST BE RECEIVED WITHIN 180 DAYS FROM THE DATE THE REQUEST FOR THE GAP BENEFIT WAS INITIATED. THE GAP ADMINISTRATION WILL NOT OBTAIN THIS DOCUMENTATION FOR YOU. FAILURE TO SUBMIT ALL DOCUMENTS IN A TIMELY MANNER WILL RESULT IN DENIAL OF THE GAP BENEFIT.

4. **OTHER EXCLUSIONS AND RESTRICTIONS**
This Addendum will not provide benefits for:

a. Losses occurring prior to the GAP Effective Date (shown in the GAP Information Page), including prior losses resulting in a BRANDED TITLE.
b. Losses caused by an act where You, Your FAMILY MEMBERS, employees or agents damage the VEHICLE intentionally causing a CONSTRUCTIVE TOTAL LOSS.
c. A request for GAP BENEFIT arising from misrepresentation of facts, falsification of documents, fraudulent or dishonest act(s), repossession, or due to legal confiscation of the VEHICLE by a public official.
d. Losses resulting directly or indirectly from any criminal or illegal act committed by You, Your FAMILY MEMBERS, employees or agents.
e. Losses resulting to a VEHICLE that is part of a fleet that is intended for use as a public livery conveyance, or any VEHICLE for COMMERCIAL USE.
f. A request for GAP BENEFIT that does not constitute a CONSTRUCTIVE TOTAL LOSS.
g. Losses caused by or resulting from any repairing, restoration, alterations, modification, or remodeling process.
h. Losses occurring outside of the United States, its territories, possessions, or Canada.
i. Losses resulting from the VEHICLE being operated, used, or maintained in any race, speed contest, or other contest.
j. Losses to Your personal property.
k. Losses resulting from wear and tear, freezing, mechanical or electrical breakdown or failure.

GAP-ADDC2411-CF (5/08)

Copy of Electronic Original
Not required to mail or fax this copy to Credit Acceptance

5.  EARLY TERMINATION AND REFUND
    If a request for GAP BENEFIT under this Addendum has not been made, You may voluntarily terminate this Addendum early by notifying the GAP Administration in writing of Your intent to terminate early. The termination date will be the date the GAP Administration receives Your written notice.

    This GAP Addendum will be deemed terminated early if any of the original FINANCING AGREEMENT terms are changed or altered, if the original FINANCING AGREEMENT is refinanced, or if the FINANCING AGREEMENT is paid off early. The deemed termination date will be the date of the event that caused the deemed early termination.

    If You voluntarily terminate this GAP Addendum in accordance with the provisions herein within the first 30 days, You will be entitled to a full refund of the GAP Addendum Purchase Price. In all other situations where there is a voluntary or deemed early termination, You will be entitled to a partial refund determined by the Rule of 78th's method less a $0 cancellation fee. Any refund that is processed will be applied to the FINANCING AGREEMENT, if it is still outstanding, or, if not, then paid to You.

    The Dealer/Creditor has no responsibility to process a refund until written notice sent by You is received by the Program Administration, in the case of a voluntary termination, or received by the Dealer/Creditor, in the case of a deemed termination. Your written notice should include: Your name and address, the FINANCING AGREEMENT number, the reason for the early termination, and the date of the event (if not a voluntary termination). If You have any questions about how to notify the Dealer/Creditor in writing, call the Program Administrator at 1-800-328-5771 ext. 6181. You may not start a legal action or other proceeding for a refund until 60 days after the GAP Administration or Dealer/Creditor has received Your written notice in accordance with this paragraph.

    It is understood and agreed that this Addendum incorporates by reference and is subject to the arbitration provisions of the FINANCING AGREEMENT and that the administrator is an intended beneficiary thereof.

6.  STATE AMENDMENTS
    The following State Amendments apply if this GAP Addendum was purchased in one of the following states:

    ILLINOIS:       Section 2. GAP BENEFIT CALCULATION, item B., is deleted and replaced with the following: If a loan/retail installment sales contract, the amount of Your PRIMARY CARRIER insurance deductible that exceeds $1000 if applicable. If a lease, the amount of Your PRIMARY CARRIER insurance deductible, if applicable.

    MINNESOTA:      The following is added to this GAP Addendum: **THE GAP WAIVER IS OPTIONAL. YOU DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY OR LEASE THIS MOTOR VEHICLE. YOU ALSO HAVE A LIMITED RIGHT TO CANCEL.** This GAP Addendum is not available for pre-owned cars and trucks with a retail value of less than $5,000.

    NEBRASKA:       The following is added: The GAP Addendum is not insurance and is not regulated by the Department of Insurance.

    NEVADA:         INSURANCE REQUIREMENTS; LATE PAYMENTS
                    This GAP Addendum is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the Financing Agreement may void this GAP Addendum.

    NEW HAMPSHIRE:  The following is added to this GAP Addendum: The initial Dealer/Creditor may assign this GAP Addendum with the FINANCING AGREEMENT to a sales finance company or other assignee.

    UTAH:           Entered into by and between Customer/Borrower and the Dealer/Creditor as shown below. The following is added as an additional disclosure to the debtor:
                    Guaranteed Asset Protective Waiver is subject to limited regulation by the commissioner; and a complaint regarding Guaranteed Asset Protection Waiver may be submitted to the commissioner.

    WASHINGTON:     The following sentence is added to the sixth paragraph of Section 6. ARBITRATION: This GAP Addendum may also be subject to Revised Code of Washington Chapter 7.04A.

GAP-ADDC2411-CF (5/08)

# EXHIBIT 12



**Transaction Report** ( Collectible transactions )

Date: 04/05/16
Page: 1 of 1

Account #: ____2722
Customer: LEDBETTER, LAURA

Address: 118 Gaylane Dr
City: Columbus
State: MS      Zip: 397025502

| Date | Description | Sub Type | Reference | Agent | Entered By | Amount | Balance/Total |
|------|-------------|----------|-----------|-------|------------|--------|---------------|
| 09/09/15 | NEW CONTRACT | | | | LSS | $13,197.60 | $13,197.60 |
| 10/08/15 | DIRECT PAYMENT | WU DLR ACH RECURRIN | 25277659 | | OPERATOR | ($293.28) | $12,904.32 |
| 11/18/15 | DIRECT PAYMENT | WU DLR ACH RECURRIN | 25966200 | | OPERATOR | ($293.28) | $12,611.04 |
| 11/30/15 | TRANSACTION CORRECTION | | | | WU_PROXY | $293.28 | $12,904.32 |
| 12/10/15 | DIRECT PAYMENT | WU COLLECTOR ATM | 26349186 | | WU_PROXY | ($300.00) | $12,604.32 |
| 12/19/15 | LATE FEE | | | | OPERATOR | $5.00 | $12,609.32 |
| 12/23/15 | DIRECT PAYMENT | WU COLLECTOR ATM | 26568220 | | WU_PROXY | ($291.56) | $12,317.76 |
| 01/19/16 | LATE FEE | | | | OPERATOR | $5.00 | $12,322.76 |
| 02/19/16 | LATE FEE | | | | OPERATOR | $5.00 | $12,327.76 |
| 03/19/16 | LATE FEE | | | | OPERATOR | $5.00 | $12,332.76 |

(TRANS.REP)